UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES SLETTE, | NO:  2:16-cv-00250-FVS |
| Plaintiff, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 13, 18 |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 13, 18.  This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation.  ECF No. 20.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 13) be DENIED and Defendant's Motion (ECF No. 18) be GRANTED.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

### THREE-STEP PROCESS FOR CHILDHOOD DISABILITY

To qualify for Title XVI supplement security income benefits, a child under

the age of eighteen must have "a medically determinable physical or mental

impairment, which results in marked and severe functional limitations, and which

can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

The regulations provide a three-step process to determine whether a claimant

satisfies the above criteria.  20 C.F.R. § 416.924(a).  First, the ALJ must determine

whether the child is engaged in substantial gainful activity.  20 C.F.R. §

416.924(b).  Second, the ALJ considers whether the child has a "medically

determinable impairment that is severe," which is defined as an impairment that

causes "more than minimal functional limitations."  20 C.F.R. § 416.924(c).

Finally, if the ALJ finds a severe impairment, she must then consider whether the

1  impairment "medically equals" or "functionally equals" a disability listed in the

2  "Listing of Impairments."  20 C.F.R. § 416.924(c)-(d).

3          If the ALJ finds that the child's impairment or combination of impairments

4  does not meet or medically equal a listing, she must determine whether the

5  impairment or combination of impairments functionally equals a listing.  20 C.F.R.

6  § 416.926a(a).  The ALJ's functional equivalence assessment requires her to

7  evaluate the child's functioning in six "domains."  These six domains, which are

8  designed "to capture all of what a child can or cannot do," are as follows:

9          (1)  Acquiring and using information:

10         (2)  Attending and completing tasks;

11         (3)  Interacting and relating with others;

12         (4)  Moving about and manipulating objects;

13         (5)  Caring for self; and

14         (6)  Health and physical well-being.

15  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A child's impairment will be deemed to

16  functionally equal a listed impairment if the child's condition results in a "marked"

17  limitations in two domains, or an "extreme" limitation in one domain.  20 C.F.R. §

18  416.926a(a).  An impairment is a "marked limitation" if it "interferes seriously

19  with [a person's] ability to independently initiate, sustain, or complete activities."

20  20 C.F.R. § 416.926a(e)(2)(i).  By contrast, an "extreme limitation" is defined as a

1  limitation that "interferes very seriously with [a person's] ability to independently

2  initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

3  ## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

4      A claimant must satisfy two conditions to be considered "disabled" within

5  the meaning of the Social Security Act.  First, the claimant must be "unable to

6  engage in any substantial gainful activity by reason of any medically determinable

7  physical or mental impairment which can be expected to result in death or which

8  has lasted or can be expected to last for a continuous period of not less than twelve

9  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

10  "of such severity that he is not only unable to do his previous work[,] but cannot,

11  considering his age, education, and work experience, engage in any other kind of

12  substantial gainful work which exists in the national economy."  42 U.S.C. §

13  1382c(a)(3)(B).

14      The Commissioner has established a five-step sequential analysis to

15  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

16  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

17  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

18  gainful activity," the Commissioner must find that the claimant is not disabled.  20

19  C.F.R. § 416.920(b).

20

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

1    At step four, the Commissioner considers whether, in view of the claimant's

2    RFC, the claimant is capable of performing work that he has performed in the past

3    (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of

4    performing past relevant work, the Commissioner must find that the claimant is not

5    disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such

6    work, the analysis proceeds to step five.

7    At step five, the Commissioner considers whether, in view of the claimant's

8    RFC, the claimant is capable of performing other work in the national economy.

9    20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

10    must also consider vocational factors such as the claimant's age, education and

11    past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

12    adjusting to other work, the Commissioner must find that the claimant is not

13    disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

14    other work, analysis concludes with a finding that the claimant is disabled and is

15    therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

16    The claimant bears the burden of proof at steps one through four above.

17    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

18    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

19    capable of performing other work; and (2) such work "exists in significant

20

numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 3, 2012, an application for supplemental security income (SSI)

under Title XVI of the Social Security Act was filed on behalf of Plaintiff, who

was then a child under the age of 18.  Tr. 193-202.  He attained the age of 18 on

July 26, 2012, while his application was under reconsideration.  Tr. 25.  Benefits

were denied initially, Tr. 125-27, and upon reconsideration.  Tr. 133-36.  Plaintiff

appeared for a hearing before an administrative law judge (ALJ) on May 19, 2014.

Tr. 50-97.  On August 28, 2014, the ALJ denied Plaintiff's claim.  Tr. 18-49.

At step one, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since the date the application was filed.  Tr. 27.  At step two, the

ALJ found that before attaining age 18, Plaintiff had the following severe

impairments: congenital heart disease status post surgery; affective disorder; and

personality disorder.  Tr. 27.  At step three, the ALJ found that before attaining age

18, Plaintiff did not have an impairment or combination of impairments that meets

or medically equals the severity of a listed impairment.  Tr. 26.  The ALJ then

determined before attaining age 18, Plaintiff did not have an impairment or

combination of impairments that functionally equals the severity of the listings.

Tr. 28.  As a result, the ALJ concluded that Plaintiff was not disabled prior to

attaining age 18; and continued on to the five step sequential evaluation of

Plaintiff's application for SSI, in order to determine whether Plaintiff was disabled

since attaining age 18.  Tr. 39.  At step two, the ALJ found that since attaining age

18, Plaintiff has not developed new impairments, and continued to have the same

severe impairments identified above, including: congenital heart disease status post

surgery; affective disorder; and personality disorder.  Tr. 39.  At step three, the

ALJ found that after attaining age 18, Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 39.  The ALJ then concluded that, since attaining age 18, Plaintiff

has the RFC

> to perform light work as defined in 20 CFR 416.967(b).  Specifically, the
> claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or
> carry 10 pounds; stand or walk about six hours and sit about six hours, in an
> eight hour workday with normal breaks; occasionally climb ramps or stairs;
> never climb ladders, ropes, or, scaffolds; avoid moderate exposure to
> pulmonary irritant such as fumes, odors, dusts and gases; avoid moderate
> exposure to workplace hazards such as dangerous machinery and working at
> unprotected heights; perform simple tasks; superficial interaction with
> coworkers, and only incidental contact with public (interaction with the
> public not a required part of the job duties); and needs a routine work
> environment with simple changes.

Tr. 40-41.  At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 43.

At step five, the ALJ found that, since attaining age 18, considering Plaintiff's age,

education, work experience, and RFC, there are other jobs that exist in significant

numbers in the national economy that the Plaintiff can perform, such as electrical

1   accessories assembler, small product assembler, and inspector, hand packager. Tr.

2   44. The ALJ concluded Plaintiff has not been under a disability, as defined in the

3   Social Security Act, since July 26, 2012, the day Plaintiff attained age 18, through

4   the date of the decision. Tr. 45.

5       On May 10, 2016, the Appeals Counsel denied review, Tr. 1-6, making the

6   ALJ's decision the Commissioner's final decision for purposes of judicial review.

7   *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

8                                  **ISSUES**

9       Plaintiff seeks judicial review of the Commissioner's final decision denying

10  him supplemental security income benefits under Title XVI of the Social Security

11  Act. ECF No. 13. Plaintiff raises the following issues for this Court's review:

12      1. Whether the ALJ properly weighed Plaintiff's symptom claims;

13      2. Whether the ALJ properly weighed the medical opinion evidence;

14      3. Whether the ALJ properly weighed the lay witness testimony; and

15      4. Whether the ALJ erred in evaluating whether Plaintiff was disabled prior to

16          attaining age 18.

17  ECF No. 13 at 5-20.

18

19

20

**DISCUSSION**

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 13 at 5-10.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

1   Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

2   must make a credibility determination with findings sufficiently specific to permit

3   the court to conclude that the ALJ did not arbitrarily discredit claimant's

4   testimony.").  "The clear and convincing [evidence] standard is the most

5   demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

6   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

7   924 (9th Cir. 2002)).

8          In making an adverse credibility determination, the ALJ may consider, *inter*

9   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

10  claimant's testimony or between his testimony and his conduct; (3) the claimant's

11  daily living activities; (4) the claimant's work record; and (5) testimony from

12  physicians or third parties concerning the nature, severity, and effect of the

13  claimant's condition.  *Thomas*, 278 F.3d at 958-59.

14         This Court finds the ALJ provided specific, clear, and convincing reasons

15  for finding that Plaintiff's statements concerning the intensity, persistence, and

16  limiting effects of his symptoms "are not entirely credible."  Tr. 41.

17              *1. Lack of Objective Medical Evidence*

18         First, the ALJ found "the objective medical evidence does not support the

19  degree of limitation alleged."  Tr. 30.  An ALJ may not discredit a claimant's pain

20  testimony and deny benefits solely because the degree of pain alleged is not

supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling physical and psychological impairments; and ultimately concluded that the objective medical does not support the degree of limitation claimed. Tr. 30, 41 (finding objective medical evidence is consistent with the assessed RFC). As to his alleged physical limitations, the ALJ sets out Plaintiff's "history of congenital heart disease status post surgery," including treatment notes from 2005, 2006, and 2010 reporting: status post transposition of the great arteries with repair in infancy; superior vena cava syndrome; asthma; tricuspid valve disease; mild supravalvular pulmonic stenosis; and premature ventricular contractions. Tr. 30 (citing Tr. 279, 282, 294). However, as noted by the ALJ, in 2006, Plaintiff had no significant cardiac murmur; denied shortness of breath or chest pain; had good breath sounds with no wheezing; and had regular

rate and rhythm with no carotid bruits.  Tr. 30 (citing Tr. 281-82).  Upon referral to

a cardiologist in 2006, Plaintiff reported he only used his inhaler every few months

as needed; was "somewhat limited compared to his peers, not in day-to-day

activities but in more strenuous activities;" had palpitations when nervous that

stopped spontaneously; and otherwise described no chest pain, palpitations,

dizziness or syncope.  Tr. 30 (citing Tr. 319).  Plaintiff underwent a balloon

angioplasty in 2006 which was noted to make "a slight improvement in his

pressures but they were not significantly elevated to start with;" and the

cardiologist determined that no further intervention was warranted at that time.  Tr.

317.  The next evaluation of Plaintiff by a cardiologist, in 2010, found normal heart

sounds with a grade 2 harsh ejection murmur without click or gallop; clear lungs;

and normal pulses.  Tr. 294.  The cardiologist "believe[d]" PVCs detected by

electrocardiogram were "probably benign;" and the Holter electrocardiogram

confirmed no high grade ectopy, and no symptoms reported.  Tr. 31, 294, 325-26.

Finally, as noted by the ALJ, Plaintiff reported in 2012 that he "has remained

essentially asymptomatic;" had a normal exercise treadmill test; and reported no

history of cyanosis, syncope, dependent edema, or palpitations.  Tr. 331.

    As to his alleged mental impairments, the ALJ noted that "there are no

significant findings by [Plaintiff's] treating providers."  Tr. 31.  For example, in

2006, Plaintiff denied depression or nervousness; and was described as in no

apparent distress, with appropriate grooming, alert, and pleasant.  Tr. 281.  As a

teenager, Plaintiff was required to attend counseling from late 2008 to the

beginning of 2009 as a prerequisite to returning to school after being expelled.  Tr.

31 (citing Tr. 358-77).  At that time, he reported that he wanted to learn how to

control his anger; had difficulty with sleep; felt hopeless; worried and obsessed

over things; was easily distracted; and had depression for two years but it was

never "bad enough to keep him from doing things."  Tr. 358.  However, Plaintiff

also reported that he was lazy when it came to work; his grades were okay but

could have been better; he had a good support system in his grandma and friends;

and he had online relationships with girls.  Tr. 360.  As noted by the ALJ, a mental

status examination in 2008 described Plaintiff as appropriately dressed; able to

maintain placement without fidgeting; eye contact and interaction were good;

speech was clear and linear; mood and affect were congruent, somewhat flat;

insight was good but judgment was impaired by not knowing when to stop; thought

content was logical.  Tr. 31 (citing Tr. 361).  The treating provider described

Plaintiff as "an independent, insightful young man with many anger issues toward

his Mom."  Tr. 362.  The ALJ also noted that in 2012 Plaintiff had left high school

and completed his GED.  Tr. 334.  Based on this evidence, the ALJ concluded that

"[t]he contemporaneous medical records do not support the degree of limitation

alleged by the claimant."  Tr. 32.

1    Plaintiff generally argues that because "this is the only clear basis for the

2    ALJ's credibility findings it is insufficient to sustain it."  ECF No. 13 at 7.

3    However, "[w]hile subjective pain testimony cannot be rejected on the sole ground

4    that it is not fully corroborated by objective medical evidence, the medical

5    evidence is still a relevant factor in determining the severity of the claimant's pain

6    and its disabling effects."  *See Rollins*, 261 F.3d at 857.  Here, as discussed below,

7    the ALJ offered several additional reasons, supported by substantial evidence, for

8    the adverse credibility finding.  Thus, the inconsistencies between Plaintiff's

9    alleged limitations and medical evidence provided a permissible reason for

10    discounting Plaintiff's credibility.  *See Thomas*, 278 F.3d at 958-59 ("If the ALJ

11    finds that the claimant's testimony as to the severity of her pain and impairments is

12    unreliable, the ALJ must make a credibility determination … [t]he ALJ may

13    consider testimony from physicians and third parties concerning the nature,

14    severity and effect of the symptoms of which the claimant complains.").

15        *2.  Daily Activities*

16    Next, in considering Plaintiff's subjective claims under both the adult and

17    childhood standard of disability, the ALJ found, respectively, that Plaintiff's

18    "reported activities show greater functional abilities than alleged;" and Plaintiff is

19    "able to engage in a wide range of daily activities consistent with the residual

20    functional capacity."  Tr. 32-33, 41.  Evidence about daily activities is properly

1   considered in making a credibility determination.  *Fair*, 885 F.2d at 603.

2   However, a claimant need not be utterly incapacitated in order to be eligible for

3   benefits.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that

4   a plaintiff has carried on certain activities…does not in any way detract from her

5   credibility as to her overall disability.").  Regardless, as in this case, "[e]ven where

6   [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for

7   discrediting the claimant's testimony to the extent that they contradict claims of a

8   totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  Here, Plaintiff

9   testified that he had trouble getting along with others; has a history of getting into

10  verbal and physical fights; goes on short walks but cannot go too long up hill; and

11  he cannot "over exert" himself due to his heart condition.  Tr. 65-69, 71.  However,

12  the ALJ found the activities outlined in the record contradict his claimed

13  limitations.  Tr. 32-33, 41.  In support of this reason, the ALJ cited therapy records

14  in 2009 wherein Plaintiff discusses "friends, a girlfriend, some work activity, and

15  youth programs;" and found this evidence shows Plaintiff "is not as cognitively or

16  socially limited as alleged."  Tr. 32 (citing Tr. 372, 374, 376).  Further, the ALJ

17  noted that Plaintiff obtained his GED; writes and performs rap music in front of

18  people; is able to follow rules and be cooperative; is "regularly described as

19  cooperative" by medical providers; was able to "bite his tongue" with a former

20  boss [when] he thought he was not properly paid; and has friends and a close

relationship with his grandmother.  Tr. 41, 58, 62, 69, 279, 281, 289, 334, 349-50, 360-61.  Plaintiff himself testified that he was a reliable employee who always showed up; and in 2012 Plaintiff reported that his behavioral problems had resolved.  Tr. 70, 357; *see Thomas*, 278 F.3d at 958-59 (in evaluating credibility, ALJ may consider inconsistencies in Plaintiff's testimony or between his testimony and his conduct).

Plaintiff argues that the "activities noted by the ALJ do not contradict [Plaintiff's] overall claim of disability, and the ALJ fails to provide any specific contradiction to his testimony."[1] ECF No. 13 at 9.  In support of this argument, Plaintiff contends that despite writing and performing rap music with other and performing in front of people, he was ultimately unsuccessful and was "unable to maintain appropriate social interaction."  ECF No. 13 at 9.  Plaintiff also cited portions of the record that indicate he would yell at people on the phone; get mad and "slack" on job duties; screamed at his boss and walked out of the job; and frequently yells at his grandmother.  ECF No. 13 at 9-10.  However, despite evidence of Plaintiff's activities that may be interpreted more favorably to him, if

---

[1] Plaintiff's briefing does not identify or challenge the ALJ's consideration of his alleged physical limitations specifically in the context of daily activities.  Thus, the Court declines to address this issue.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

1   the evidence in the record "is susceptible to more than one rational interpretation,

2   [the court] must uphold the ALJ's findings if they are supported by inferences

3   reasonably drawn from the record."  *See Molina*, 674 F.3d at 1111; *see also*

4   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible

5   for determining credibility").  Here, despite Plaintiff's claims to the contrary, the

6   ALJ "discussed Plaintiff's activities in detail throughout the decision, noting how

7   the activities undermined allegations of additional functional limitations."  ECF

8   No. 18 at 9 (citing Tr. 33-38).  For example, as noted above, Plaintiff's therapy

9   records discussed his friends, his girlfriend, some work activity and a work

10   program; which the ALJ specifically found "shows the claimant is not as

11   cognitively or socially limited as alleged."  Tr. 32.  In addition, the ALJ noted that

12   despite Plaintiff's grandmother's testimony that he could not focus, he was able to

13   play video games and "write/perform" music; and "[w]hile he has difficulties

14   socially, he is able to interact with others as shown in his past work interviewing

15   people, he has some friends, and he was described as cooperative by an examiner."

16   Tr. 32-33, 58, 62, 279, 281, 289, 349-50, 358-61.  The Court finds evidence of

17   Plaintiff's daily activities, discussed in detail throughout the ALJ's decision, was

18   reasonably considered as "show[ing] greater functional abilities than alleged."  *See*

19   Tr. 33.  This was a clear and convincing reason to find the Plaintiff not credible.

20         *3.  Failure to Pursue Treatment*

1      Finally, the ALJ found "the lack of medical evidence underscores that the

2  claimant's impairments are not as limiting as alleged.  There is only routine

3  follow-ups for his cardiovascular impairment, and no evidence of mental health

4  treatment expect when required by a school. There is no medical evidence since he

5  turned age eighteen except for the examination arranged by this agency."  Tr. 41.

6  The ALJ additionally noted that Plaintiff's "medical records show he would go for

7  years without any follow-up care with a cardiologist," and he was not prescribed

8  cardiac medication; "which suggests his cardiac impairment was not very limiting

9  when he was a child."  Tr. 30 (citing Tr. 289, 298).  Unexplained, or inadequately

10  explained, failure to seek treatment or follow a prescribed course of treatment may

11  be the basis for an adverse credibility finding unless there is a showing of a good

12  reason for the failure.  *See Orn*, 495 F.3d at 638.  Further, an ALJ "will not find an

13  individual's symptoms inconsistent with the evidence in the record on this basis

14  without considering possible reasons he or she may not comply with treatment or

15  seek treatment consistent with the degree of his or her complaints."  Social

16  Security Ruling ("SSR") 16-3p at *8 (March 16, 2016), *available at* 2016 WL

17  1119029.

18      Plaintiff does not challenge this reasoning in his opening brief; and in his

19  reply brief he contends this "is *post hoc* reasoning, and the ALJ did not suggest this

20  as a reason for finding [Plaintiff's] testimony non-credible."  ECF No. 19 at 2.

This argument is unavailing.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (the court may make inferences from the ALJ's discussion of the evidence, if the inferences are there to be drawn).  In the alternative, Plaintiff argues that the ALJ improperly fails to consider Plaintiff's "barriers to treatment such as a poor education and employment history, minimal income, and has lived a transient lifestyle."  ECF No. 19 at 2-3 (citing Tr. 55-64, 73-84, 349).  However, the records cited by Plaintiff in support of this assertion do not include any "good" reasons offered by Plaintiff *specifically* for his failure to seek treatment.  The only evidence that could arguably be considered a justification for the lack of treatment is a statement by Plaintiff's attorney at the hearing, in response to the ALJ's query as to whether the submitted medical record was complete, acknowledging that "[t]here's not really much" in the way of medical records, and going on to add:

> I think his behavioral health was short in nature and then his physical side … is more on regular checkups but with the transient kind of life style as you have probably noticed – [Plaintiff] is couch surfing here and there and trying to be independent, but at the same time realizing let's go back to his grandmother's on numerous bases.  It is – his consistent medical there is not there.

Tr. 55.  A review of the record indicates that Plaintiff "couch surfed" for an undetermined length of time; moved to California for a three weeks and stayed with friends in pursuit of a "record deal;" has plans to "go on tour this summer;" and once moved with his grandparents "for a little while."  Tr. 58-59.  The Court finds this evidence does not rise to the level of a justification for Plaintiff's failure

1   to pursue treatment consistent with the degree of his complaints, such that the ALJ

2   would be obligated to consider it as part of her reasoning on this issue.  *See* SSR

3   16-3p at *8.  Thus, the ALJ reasonably considered Plaintiff's lack of treatment in

4   the record as a basis for the adverse credibility finding.  Moreover, even assuming,

5   *arguendo*, that the ALJ erred in considering Plaintiff's inability to afford treatment,

6   any error is harmless because the ALJ's ultimate credibility finding is adequately

7   supported by substantial evidence.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*,

8   533 F.3d 1155, 1162-63 (9th Cir. 2008).

9        The Court concludes that the ALJ supported the adverse credibility finding

10   with specific, clear and convincing reasons supported by substantial evidence.

11        **B. Medical Opinion Evidence**

12        Plaintiff faults the ALJ for discounting the opinion of examining provider

13   Manuel Gomes, Ph.D.  ECF No. 13 at 11-16.

14        There are three types of physicians: "(1) those who treat the claimant

15   (treating physicians); (2) those who examine but do not treat the claimant

16   (examining physicians); and (3) those who neither examine nor treat the claimant

17   [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

18   *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

19   Generally, a treating physician's opinion carries more weight than an examining

20   physician's, and an examining physician's opinion carries more weight than a

1   reviewing physician's.  *Id.* at 1202.  If a treating or examining physician's opinion

2   is uncontradicted, the ALJ may reject it only by offering "clear and convincing

3   reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d

4   1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any

5   physician, including a treating physician, if that opinion is brief, conclusory and

6   inadequately supported by clinical findings."  *Bray*, 554 F.3d at 1228 (internal

7   quotation marks and brackets omitted).  "If a treating or examining doctor's

8   opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

9   providing specific and legitimate reasons that are supported by substantial

10  evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31).

11         In October 2012, Dr. Manuel Gomes examined Plaintiff in connection with

12  his application for disability benefits, and completed a "functional

13  assessment/medical source statement."  Tr. 347-53.  Dr. Gomes opined that

14  Plaintiff had no impairment in his ability to perform simple and repetitive tasks;

15  and moderate impairment "based on historical diagnosis of ADHD" to perform

16  detailed and complex tasks.  Tr. 353.  He further opined that Plaintiff had a marked

17  impairment in his ability to accept instructions from supervisors; was severely

18  impaired in his ability to operate independently without monitoring; "does not have

19  sufficient history to have confidence in his ability to maintain regular workplace

20  attendance" but would likely have "at least moderate difficulty maintaining regular

1    attendance, based on lack of interpersonal skills and emotional control;" and "has

2    moderate impairment in his ability to manage the usual workplace stressors based

3    on previous behaviors."   Tr. 353.  The ALJ accorded "little weight" to "most" of

4    Dr. Gomes' opinion, and in particular, "the more severe findings."  Tr. 42.

5    Because Dr. Gomes' opinion was contradicted by Dr. Edward Beaty, Tr. 119-21,

6    the ALJ was required to provide specific and legitimate reasons for rejecting Dr.

7    Gomes' opinion.  *Bayliss*, 427 F.3d at 1216.

8        First, the ALJ found Dr. Gomes' opinion that Plaintiff had a marked

9    limitation on his ability to accept instructions from supervisors was "largely based

10   on the claimant's self-reports while the claimant is not entirely credible."  Tr. 42.

11   An ALJ may reject a physician's opinion if it is based "to a large extent" on

12   Plaintiff's self-reports that have been properly discounted as incredible.

13   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Plaintiff argues this

14   finding is "insufficient to reject Dr. Gomes' opinion" because Dr. Gomes "did not

15   indicate that his opinion was based on Plaintiff's self-reports."  ECF No. 13 at 13.

16   Instead, Plaintiff contends Dr. Gomes based his opinion on his review of Plaintiff's

17   medical records; and his clinical interview, which included a mental status

18   examination.  ECF No. 13 at 13-14.  As an initial matter, Defendant correctly notes

19   that, contrary to Plaintiff's assertion, a doctor is not required to "explicitly state

20   that this or her conclusion was more heavily based on self-reports, only that there

1    must be some evidentiary basis for the ALJ to so find."  ECF No. 18 at 13 (citing

2    *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)).  Here, a review of Dr.

3    Gomes' opinion supports the ALJ's conclusion that it was based in large part on

4    Plaintiff's self-report.  *See* 347-53.  Dr. Gomes conducted a mental status

5    examination; however, the results of the mental status examination were largely

6    unremarkable aside from judgment/insight findings reflecting "aggressive

7    responses when in conflict with other[s]" and a "propensity not to empathize with

8    others."  Tr. 351.  Dr. Gomes also failed to discuss how the results of the mental

9    status examination supported his finding that Plaintiff would be markedly limited

10   in his ability to accept instructions from supervisors.  Tr. 350-53.

11        Instead, Dr. Gomes based his opinion that Plaintiff was markedly limited in

12   his ability to accept instructions from supervisors solely on his "history of conflicts

13   with others and with authority figures."  Tr. 353.  However, as noted by Defendant,

14   "Dr. Gomes' discussion shows he relied on Plaintiff's own description of his

15   problems."  ECF No. 18 at 13.  For instance, Dr. Gomes was not able to review

16   Plaintiff's academic records, and instead relied on "examples" of school behavior

17   issues reported by Plaintiff, including his own report that he "*may have* been

18   diagnosed with oppositional defiant disorder."  Tr. 348 (emphasis added), Tr. 352.

19   Moreover, the "discussion/prognosis" section of Dr. Gomes' opinion relies on

20   Plaintiff's own "complaints" of school and home behavior problems as "reflecting

his difficulty getting along with others." Tr. 352. Of particular note, Dr. Gomes

found Plaintiff was "not an adequate historian for the full extent of his medical and

behavioral issues. He lacks full detail, full recall, and awareness of his issues, and

only his medical records were presented for record. His school/academic records

should be included for a more thorough evaluation of his disabilities."[2] Tr. 348.

Finally, while Dr. Gomes' evaluation indicates that he reviewed medical evidence,

which was entirely comprised of four hospital "visit" notes; he does not appear to

rely on this evidence as support for the opined marked limitation in Plaintiff's

ability to accept instructions from supervisors. For all of these reasons, it was

reasonable for the ALJ to conclude this portion of Dr. Gomes' opinion was based

in large part on Plaintiff's properly discounted subjective complaints. *See Burch*,

400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the

---

[2] Plaintiff argues this finding suggests that, "if anything, [Plaintiff's] self-reports

understated the severity of his conditions." ECF No. 13 at 13. However,

regardless of the veracity of Plaintiff's reports, this portion of Dr. Gomes'

evaluation arguably confirms that he was, in fact, reliant on Plaintiff's own report

due to his inability to review objective academic records. *See Burch*, 400 F.3d at

679 (where evidence is susceptible to more than one interpretation, the ALJ's

conclusion must be upheld).

1  ALJ's conclusion must be upheld).  This was a specific and legitimate reason to

2  reject Dr. Gomes' opinion.

3    Second, the ALJ found the severity of Dr. Gomes' opinion regarding

4  Plaintiff's ability to accept instructions from supervisors was "inconsistent with his

5  own examination findings that [Plaintiff] was cooperative.  In fact, none of

6  [Plaintiff's] medical providers describe him as angry or unpleasant."  Tr. 42.  A

7  "discrepancy" between a treating provider's clinical notes and that provider's

8  medical opinion is an appropriate reason for the ALJ to not rely on that opinion

9  regarding the claimant's limitations.  *See Bayliss*, 427 F.3d at 1216; *see also Orn*,

10  495 F.3d at 631 (the consistency of a medical opinion with the record as a whole is

11  a relevant factor in evaluating that medical opinion).  Here, Dr. Gomes explicitly

12  noted that Plaintiff "did appear cordial and cooperative throughout the evaluation

13  and he does have at least one friend suggesting limited ability to interact

14  appropriately with others."  Tr. 42, 353.  Plaintiff argues this notation from Dr.

15  Gomes "does not undermine" his opinion; instead, according to Plaintiff, this

16  "shows [Plaintiff] is capable of a limited amount of appropriate social interaction,

17  particularly in dealing with trained medical [personnel], that learn special

18  techniques to deal with patients with impairments."  ECF No. 13 at 14.  Plaintiff

19  also cites evidence from the overall record to support his argument, including:

20  Plaintiff's testimony that he screamed at his boss and walked out of his job;

1    Plaintiff's testimony that he walked out on his grandmother while working for her;

2    and school records indicating "poor response to authority."  ECF No. 13 at 14-15

3    (citing Tr. 64, 68, 70, 267).  However, Dr. Gomes did not review Plaintiff's

4    academic records; nor did Plaintiff did not report any difficulties in the workplace

5    at the time of the evaluation.  *See* Tr. 348-49.  Moreover, as noted by the ALJ,

6    Plaintiff himself reported in October 2012 that his behavioral issues had resolved.

7    Tr. 42, 357.  Overall, regardless of evidence that could be interpreted more

8    favorably to Plaintiff, it is susceptible to more than one rational interpretation, and

9    therefore the ALJ's conclusion must be upheld.  *See Burch*, 400 F.3d at 679.  The

10    inconsistencies between Dr. Gomes' own findings, and the severity of his opinion

11    regarding Plaintiff's ability to accept criticism from supervisors, was a specific and

12    legitimate reason to reject Dr. Gomes' opinion.

13        Finally, the ALJ granted little weight to Dr. Gomes' opinion that Plaintiff

14    was severely impaired in his ability to operate independently without monitoring;

15    rather, according to the ALJ "the evidence shows [Plaintiff] does what interests

16    him: writes music, performs music, plays video games, and smokes marijuana

17    when he has the money."  Tr. 42.  The ALJ also noted that Plaintiff obtained his

18    GED.  Tr. 42.  An ALJ may discount an opinion that is inconsistent with a

19    claimant's reported functioning.  *See Morgan v. Comm'r of Soc. Sec. Admin*., 169

20    F.3d 595, 601-02 (9th Cir. 1999).  Plaintiff argues the activities cited by the ALJ

do not contradict Dr. Gomes' opinion regarding Plaintiff's ability to operate

independently, particularly in light of Plaintiff's inability "to successfully perform

his music for very long, despite this being an activity which interests him."  ECF

No. 13 at 15-16.  However, regardless of evidence that Plaintiff's chosen activities

might be difficult to accomplish, the Court's review of the record indicates that

Plaintiff continues to pursue his music career, including the attempt at a "record

deal" in California, ongoing writing and performing, and an upcoming summer

tour.  Tr. 58, 60-61.  Thus, it was reasonable for the ALJ to find Plaintiff's

activities were inconsistent with the severity of Dr. Gomes' opinion regarding his

ability to operate independently.  *See Burch*, 400 F.3d at 679.  This was a specific

and legitimate reason to reject Dr. Gomes' opinion.

　　　　For all of these reasons, the Court finds the ALJ properly rejected Dr.

Gomes' opinion.

**C. Lay Witness Testimony**

　　　　Plaintiff contends the ALJ erred in rejecting the testimony of Plaintiff's

grandmother, Vicki Barry.  ECF No. 13 at 16-18.

　　　　"In determining whether a claimant is disabled, an ALJ must consider lay

witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r, Soc.*

*Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12

F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to

observe a claimant's symptoms and daily activities are competent to testify as to [his] condition.").  To discount evidence from lay witnesses, an ALJ must give reasons "germane" to each witness.  *Dodrill*, 12 F.3d at 919.  Here, Ms. Barry testified that Plaintiff could not work full time because of his social skills, body hygiene, and attention span.  Tr. 43, 73.  She also testified that he could not do physical labor; was "let go" from his last job due to hygiene habits; does not get along with people; gets in disagreements with supervisors; cannot focus on anything for any period of time; and cannot follow rules.  Tr. 43, 73-74, 77-79.  The ALJ considered Ms. Barry's testimony as part of the evaluation of Plaintiff's disability claim before attaining age 18, and his SSI claim as an adult.  In both instances, the ALJ accorded her testimony "some, but not great" and "little" weight, respectively.  Tr. 32, 43.

First, the ALJ found Ms. Barry's testimony "shows the claimant has cognitive and social limitations, [but] the objective medical evidence is not consistent with the degree alleged by Ms. Barry."  Tr. 43; *see also* Tr. 32 ("The reports of the severity of [Plaintiff's] condition is inconsistent with the objective medical evidence that shows minimal treatment and no medication.").  Inconsistency with medical evidence is a germane reason for rejecting lay witness evidence.  *Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511.  In support of this finding, the ALJ cited the entire lack of medical evidence from Plaintiff's "cardiac

1   impairment that suggests any great physical limitations, and he is not on any

2   medications for his physical or mental conditions." Tr. 43. The ALJ also noted

3   that Plaintiff is "described as pleasant by providers and with no reported

4   difficulties paying attention." Tr. 32. Plaintiff argues that Ms. Barry's testimony

5   is not contradicted by the record, and "in fact," is consistent with the "medical

6   record and the opinion evidence." ECF No. 13 at 16-17. However, Plaintiff fails

7   to cite specific evidence to contradict the ALJ's finding that Ms. Barry's testimony

8   is not supported by the objective medical record. Moreover, as discussed *supra*,

9   the ALJ properly rejected Plaintiff's subjective complaints and Dr. Gomes' opinion

10  as to Plaintiff's alleged psychological limitations. This was a germane reason to

11  reject Ms. Barry's lay witness testimony.

12       Second, the ALJ found Ms. Barry's testimony regarding the severity of

13  Plaintiff's condition was inconsistent with his reported activities. Tr. 32. "For

14  instance, while she reported [Plaintiff] could not focus on anything, the evidence

15  shows he plays video games and can focus to write/perform music." Tr. 32-33, 43.

16  Moreover, the ALJ found that "[w]hile he has difficulties socially, [Plaintiff] is

17  able to interact with others as shown with his past work interviewing people, he

18  has friends, and he was described as cooperative by an examiner." Tr. 33, 43.

19  Inconsistency between a claimant's activities and a lay witness's testimony is a

20  germane reason to discount the lay testimony. *See Carmickle*, 533 F.3d at 1164.

1    Plaintiff argues this was not a germane reason because Ms. Barry does not dispute

2    that Plaintiff has a few friends, "but she noted that he is constantly yelling and

3    arguing with them." ECF No. 13 at 17 (citing Tr. 79-80). However, as argued by

4    Defendant, the ALJ "acknowledged these [social issues], but merely disagreed that

5    they resulted in a complete inability to work given that Plaintiff was still able to

6    maintain these relationships." ECF No. 18 at 16. Thus, regardless of evidence that

7    could be interpreted more favorably to Plaintiff, it is susceptible to more than one

8    rational interpretation, and therefore the ALJ's conclusion must be upheld. *See*

9    *Burch*, 400 F.3d at 679. This was another germane reason to reject Ms. Barry's

10   testimony.

11        **D. Childhood Disability Claim**

12        Plaintiff argues the ALJ erred in her consideration of Plaintiff's childhood

13   disability claim, specifically, as to whether he functionally equaled a listing. ECF

14   No. 13 at 18-19.

15        Where a child's impairment does not meet or equal one of the Listings, his

16   impairments are evaluated under a functional equivalency standard. 20 C.F.R. §

17   416.926a. To be functionally equivalent, an impairment must "result in 'marked'

18   limitations in two domains of functioning or an 'extreme' limitation in one

19   domain." § 416.926a(a). The domains of functioning are: (1) acquiring and using

20   information; (2) attending and completing tasks; (3) interacting and relating to

others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  § 416.926a(b)(1).

A limitation is marked where an impairment "interferes seriously with your ability to independently initiate, sustain, or complete activities."  § 416.926a(e)(2)(i).  Marked limitations are "'more than moderate' but 'less than extreme.'"  § 416.926a(e)(2)(i).  A limitation is extreme where an impairment "interferes very seriously with your ability to independently initiate, sustain, or complete activities."  § 416.926a(e)(3)(i).

The ALJ is responsible for deciding functional equivalence after consideration of all evidence submitted.  20 C.F.R. § 416.926a(n).  The regulations list the information and factors that will be considered in determining whether a child's impairment functionally equals a listing.  20 C.F.R. §§ 416.926a, 416.924a, 416.926a.  In making this determination, the Commissioner considers test scores together with reports and observations of school personnel and others.  §§ 416.924a, 416.926a(e)(4)(ii).  The ALJ also considers what activities the child is, or is not, able to perform; how much extra help the child needs in doing these activities; how independent he is; how he functions in school; and the effects of treatment, if any.  § 416.926a(b).  In evaluating this type of information, the ALJ will consider how "appropriately, effectively, and independently" the child performs activities as compared to other children his age who do not have

1    impairments.  § 416.926a(b).  This information comes from examining and non-

2    examining medical sources as well as "other sources" such as parents, teachers,

3    case managers, therapists, and other non-medical sources who have regular contact

4    with the child.  *See* § 416.913(c)(3), d; Social Security Ruling ("SSR") 98-1p,

5    IV.B.

6         Plaintiff argues the ALJ erred by finding less than marked limitations in the

7    domains of interacting and relating with others.  ECF No. 13 at 18-19.  In the

8    "interacting and relating with others" domain, the ALJ considers how well the

9    child initiates and sustains emotional connections with others, develops and uses

10   the language of his community, cooperates with others, complies with rules,

11   responds to criticism, and respects the possessions of others.  20 C.F.R. §

12   416.926a(i).  A typically functioning adolescent (age 12 to attainment age of 18) is

13   expected to: initiate and develop friendships with children who are your age and to

14   relate appropriately to other children and adults, both individually and in groups;

15   begin to be able to solve conflicts between yourself and peers or family members

16   or adults outside your family; recognize that there are different social rules for you

17   and your friends and for acquaintances or adults; be able to intelligibly express

18   your feels, ask for assistance in getting your needs met, seek information, describe

19   events, and tell stories, in all kinds of environments, and with all types of people.

20   § 416.926a(i)(2)(v).

1        The ALJ found Plaintiff had less than marked limitation in interacting and

2    relating with others.  Tr. 35-36.  In support of this finding, the ALJ noted that

3    Plaintiff's mother reported he has difficulty dealing with people on a social level;

4    but his ability to communicate is not limited, and he has no problems speaking or

5    hearing clearly.  Tr. 36 (citing Tr. 216-19).  Plaintiff was reported to have friends

6    his own age; but he did not make new friends, get along with her or other adults,

7    generally did not get along with siblings and teachers, and did not play team sports.

8    Tr. 36 (citing Tr. 220).  The ALJ also acknowledged that Plaintiff had problems

9    with anger as a teenager and was expelled from school.  Tr. 36.  However, Plaintiff

10   himself reported he used music to communicate his feelings; had a good support

11   system with his grandma and friends; and online relationships with girls.  Tr. 36,

12   358-60.  The ALJ also noted Plaintiff's minimal medical treatment as a child; "no

13   mental health medications;" cooperative and polite description at the psychological

14   examination performed by Dr. Gomes shortly after he turned eighteen; and reports

15   at that time that Plaintiff had a positive relationship with his grandmother and a

16   close friend.  Tr. 36, 348-50.  Finally, the ALJ found no objective medical

17   evidence to support a marked finding in this domain.

18       Plaintiff argues the ALJ "supported this conclusion with the same erroneous

19   reasoning" discussed in detail above; and "erroneously cherry-picked the therapist

20   records and the findings from Dr. Gomes."  ECF No. 13 at 18.  The Court

1    disagrees.  First, as discussed above, the ALJ's adverse credibility finding,

2    discounting of Ms. Barry's lay testimony, and rejection of Dr. Gomes' medical

3    opinion; were legally sufficient and supported by substantial evidence.  Moreover,

4    Dr. Gomes' evaluation occurred after Plaintiff attained the age of eighteen, and

5    therefore had less relevance as to Plaintiff's childhood disability claim.[3]  *See*

6    *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (a statement of

7    disability made outside the relevant time period may be disregarded).  In addition,

8    regardless of evidence that could be considered more favorable to Plaintiff, the

9    evidence is susceptible to more than one rational interpretation, thus, the ALJ's

10   conclusion must be upheld.  *See Burch*, 400 F.3d at 679.  Finally, the Court notes

11   that a medically determinable impairment or combination of impairments

12   functionally equals a listed impairment only if it resulted in "marked" limitations

13   in *two* domains of functioning or an "extreme" limitation in one domain.  20

14   C.F.R. § 416.926a (emphasis added).  Here, the ALJ did not find marked or

---

15   [3] Plaintiff contends that his "disability in adulthood should be found to have

16   extended into his youth as well, since the majority of this case also pertains to his

17   adolescent period."  ECF No. 13 at 19.  This argument is inapposite.  As noted by

18   Defendant, Plaintiff was not found disabled by the ALJ under either standard, and

19   the two claims "are based on different standards and evaluated based on different

20   sequential steps."  ECF No. 18 at 18.

1    extreme limitation in any domain of functioning (Tr. 33-39); and Plaintiff only

2    specifically challenges the ALJ's finding that Plaintiff has less than marked

3    limitations in the domain of interacting with and relating to others.[4]  Thus, even if

4    the ALJ erred by finding Plaintiff had less than marked limitations solely in this

5    domain, any error is harmless because, based on the entire record, it would be

6    inconsequential to the determination that Plaintiff is not disabled.  *Molina*, 674

7    F.3d at 1115.

8        The ALJ properly considered the record as a whole, and found a less than

9    marked limitation in the domain of interacting and relating with others, as

10    supported by substantial evidence.

11                            **CONCLUSION**

12

13    [4] Plaintiff's briefing does note that "[t]hese same limitations caused him to have at

14    least marked limitations in the second domain – that of attending and completing

15    tasks, as [Plaintiff] demonstrated an incapacity to attend to his schooling."  ECF

16    No. 13 at 19.  Plaintiff fails to cite legal authority or specific evidence from the

17    record to support this statement; nor does he challenge the specific findings made

18    by the ALJ in finding a less than marked limitation in this domain.  Thus, the Court

19    declines to address this issue.  *See Carmickle*, 533 F.3d at 1161 n.2 (court may

20    decline to address issue not raised with specificity in Plaintiff's briefing).

1    After review, the Court finds that the ALJ's decision is supported by

2    substantial evidence and free of harmful error.

3    **ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

4       1. Plaintiff's Motion for Summary Judgment, ECF No. 13, be **DENIED**.

5       2. Defendant's Motion for Summary Judgment, ECF No. 18, be

6          **GRANTED**.

7                                **OBJECTIONS**

8    Any party may object to a magistrate judge's proposed findings,

9    recommendations or report within **fourteen (14)** days following service with a

10   copy thereof.  Such party shall file written objections with the Clerk of the Court

11   and serve objections on all parties, specifically identifying the portions to which

12   objection is being made, and the basis therefor.  Any response to the objection

13   shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

14   directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of

15   service.

16   A district judge will make a *de novo* determination of those portions to

17   which objection is made and may accept, reject or modify the magistrate judge's

18   determination.  The judge need not conduct a new hearing or hear arguments and

19   may consider the magistrate judge's record and make an independent

20   determination thereon.  The judge may, but is not required to, accept or consider

1 additional evidence, or may recommit the matter to the magistrate judge with

2 instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

3 § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern

4 District of Washington.

5     A magistrate judge's recommendation cannot be appealed to a court of

6 appeals; only the district judge's order or judgment can be appealed.

7     The District Court Executive is directed to enter this Report and

8 Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

9 **MANAGEMENT DEADLINE ACCORDINGLY.**

10     DATED June 28, 2017.

11                 s/Mary K. Dimke
                     MARY K. DIMKE

12        UNITED STATES MAGISTRATE JUDGE